

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KENNETH H. KLOCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 05 C 2043 |
| v. ) | |
| ) | Judge John W. Darrah |
| ARLO J. KLOCK, MAURICE L. KLOCK, ) | |
| RUBY E. GORENZ, and the UNITED STATES ) | |
| OF AMERICA, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff/Counter-Defendant, Kenneth H. Klock ("Kenneth"), filed a Complaint for Partition in the Circuit Court of the Sixteenth Judicial Circuit, Kane County, Illinois. The United States of America removed the case to this Court; and Arlo J. Klock ("Arlo"), Maurice L. Klock ("Maurice"), and Ruby E. Gorenz ("Ruby") (collectively "Counter-Plaintiffs") filed a Counterclaim for Partition. Presently pending before the Court is Counter-Plaintiffs' Petition to Confirm Sale, Provide Payment of the Federal Tax Lien, for Attorney's Fees and Costs, and Other Relief.

## BACKGROUND

Kenneth and Counter-Plaintiffs are the sole heirs of the estate of their mother, Amelia Klock ("Amelia"). Amelia passed away on September 6, 2001. Amelia bequeathed certain property located in Kane County equally to each of her four surviving children. The executors of Amelia's estate conveyed an undivided one-quarter interest in the subject property to each of the four children. The subject property is a farm of approximately 157 acres located in unincorporated Kane County, Illinois, and is zoned agricultural. The property is being operated as a grain farm by Maurice. Maurice's leasehold interest expires February 28, 2007.

On June 5, 2002, the parties entered into an "Agreement" relating to Internal Revenue Code Section 2032A (Known as Special Use Valuation) and Section 2057 (known as Qualified Family-Owned Business Interest Deduction). The Agreement provides, in pertinent part:

> All the Parties hereto agree that the Election to be made under Section 2057 shall apply to the undivided 3/4ths interest in the 157 acres that will be distributed to and among Maurice L. Klock, Ruby E. Gorenz and Arlo J. Klock and that the aforesaid Election shall not apply to the undivided 1/4th interest in the aforesaid 157 acres that will be distributed to Kenneth H. Klock. Further, any tax and interest generated by failure to comply with the provisions of Section 2057 shall be paid by Maurice L. Klock, Ruby E. Gorenz and Arlo J. Klock and not by Kenneth H. Klock, if such failure to comply is caused by Maurice L. Klock, Ruby E. Gorenz and/or Arlo J. Klock, and in such event Maurice L. Klock, Ruby E. Gorenz and Arlo J. Klock shall indemnify and hold harmless Kenneth H. Klock from any such liability to pay any tax and interest thereon. If Kenneth H. Klock causes such failure to comply with the provisions of Section 2057 he shall pay one-fourth of any tax and interest generated by such failure. If Maurice L. Klock, Ruby E. Gorenz, Arlo J. Klock, and Kenneth H. Klock, all agree in writing to sell the 157 acres or any part thereof and if such sale causes a failure to comply with the provisions of Section 2057, Maurice L. Klock, Ruby E. Gorenz, Arlo J. Klock and Kenneth H. Klock shall each pay one-fourth of any tax and interest generated by such failure to comply.

That same day, the Amelia estate, on Schedule T of the Federal Estate Tax Return of Amelia A. Klock, made an election under Section 2057 of the Internal Revenue Code, 26 U.S.C. § 2057, to deduct as a qualified family-owned business interest the undivided 75 percent interest in the subject property owned by Maurice, Ruby, and Arlo. Maurice, Ruby, and Arlo signed the Schedule T as qualified heirs; and Kenneth signed the Schedule T as an interested party. In February 2004, as a result of the Section 2057 election, a Federal Estate Tax lien, in the amount of $220,509

2

plus interest, was recorded against the subject property. The federal lien identifies the description of the property to which the lien attaches as the "undivided 3/4 interest in and to" the subject property.

In March 2005, Kenneth filed a Complaint for Partition in the Circuit Court of the Sixteenth Judicial Circuit, Kane County, Illinois. The United States removed the case to this Court, and the Counter-Plaintiffs filed a Counterclaim for Partition. Kenneth's Complaint failed to accurately set forth all of the interests of the parties, and Kenneth's Complaint was subsequently dismissed. The Counterclaim accurately set forth the interests of all the parties in the subject property.

In December 2005, a Judgment for Partition was entered, ordering a sale of the subject property by the Sheriff of Kane County. Pursuant to the Judgment for Partition, the sale was advertised in the Elgin Courier News on December 24 and 31, 2005, and January 17, 2006. In addition, a sale notice was posted on the subject property, notices were posted in public places, and fliers were distributed in the Hampshire, Illinois area.

On February 6, 2006, a sale was conducted at the Kane County Courthouse. An estimated 75 to 100 people attended the sale. Seven sale attendees registered as potential bidders on the subject property. Six of the seven registered bidders actively bid on the subject property. Arlo, Maurice, and Ruby, through their counsel, were the high bidders of the subject property, in the amount of $4,875,000.

## ANALYSIS

Counter-Plaintiffs seek to have the tax lien paid from the proceeds of the sale of the subject property, including 25 percent to be paid by Kenneth. Kenneth opposes contributing to the payment of the tax lien, arguing that no part of the tax lien is presently due; no part may ever become due;

3

and, because the Section 2057 applies only to the 75 percent undivided interest of the subject property owned by the Counter-Plaintiffs, he is not required to contribute to the tax lien.

Section 2057 of the IRC provides for a deduction in taxes for certain family-owned business interests. If a deduction is taken pursuant to Section 2057, the tax becomes due if, within ten years after the date of the decedent's death and before the date of the qualified heir's death: (1) the property no longer qualifies as a qualified family-owned business, (2) the qualified heir disposes of any portion of the qualified family-owned business interest, (3) the qualified heir loses United States citizenship, or (4) the principal place of business of the qualified family-owned business interest ceases to be located in the United States (collectively, "Section 2057 event"). 26 U.S.C. § 2057(f)(1). The estate tax then imposed is equal to the applicable percentage of the adjusted tax difference attributable to the qualified family-owned business interest plus applicable interest on that amount. 26 U.S.C. § 2057(f)(2)(A). The percentage of the estate tax due varies, depending on when the events of Section 2057(f)(1) occur. If the Section 2057(f)(1) event occurs in the following years of the decedent's death, the applicable percentage due is as follows: years 1 through 6, 100 percent; year 7, 80 percent; year 8, 60 percent; year 9, 40 percent; and year 10, 20 percent. 26 U.S.C. § 2057(f)(2)(B).

In the instant case, a Section 2057 deduction was made as to Maurice's, Ruby's and Arlo's undivided 3/4ths interest in the subject property. The parties, in the above set-out Agreement, provided that the Section 2057 election applied only to the 3/4 undivided interest in the subject property and that Kenneth would be required to pay a 1/4th share of any tax due if he caused a Section 2057(f)(1) event to occur or if all parties agreed to sell the property *and* that sale caused a Section 2057(f)(1) event to occur.

4

The parties dispute whether the tax lien attached to the entire property, requiring Kenneth to contribute to satisfying the lien, and the interpretation of the Agreement and the Agreement's effect on whether Kenneth is required to contribute to satisfying the lien based on his actions. Based on the materials provided to the Court, questions of fact exist as to these issues, requiring a hearing on these issues.

Counter-Plaintiffs also seek to have Kenneth pay 25 percent of the attorney's fees that were incurred for the partition sale. The attorney's fees total $64,380.00, based on 257.6 hours of work at the rate of $250/hour.

When the rights and interests of all the parties in interest are properly set forth in a complaint for the partition of real estate, "the court shall apportion the costs among the parties in interest in the action, including . . . a reasonable fee for plaintiff's attorney, so that each party shall pay his or her equitable portion . . . ." 735 ILCS 5/17/125. The award of attorney's fees is based on the premise that the plaintiff's attorney acts in the interest of all the parties. *See Clayton v. Bradford Nat. Bank*, 250 Ill. App. 3d 775, 777 (1993) (*Clayton*). Thus, an award of attorney's fees is only appropriate where it is not necessary that the defendant employ counsel to protect his interest in the property. *See Clayton*, 250 Il. App. 3d at 777. The award of attorney's fees pursuant to the statute includes those incurred by a counterclaimant. *See Clayton*, 250 Il. App. 3d at 783.

Kenneth opposes contributing to Counter-Plaintiffs' attorney's fees, arguing that: Counter-Plaintiffs' counsel did not perform any legal services for Kenneth; Kenneth did not benefit from any of Counter-Plaintiffs' attorney's work; and Counter-Plaintiffs' counsel was retained to protect Counter-Plaintiffs' interests only, and Kenneth had his own attorney to protect his interest.

In support of his opposition to attorney's fees, Kenneth provides Counter-Plaintiffs' counsel's deposition transcript. In his deposition, Counter-Plaintiffs' counsel testified: (1) that he was hired by Counter-Plaintiffs, (2) that the "real" dispute among the family was Kenneth's desire to sell the property and Counter-Plaintiffs' desire to keep the property, (3) that he spent most of his time advising Counter-Plaintiffs about settlement with Kenneth and how much to bid on the sale of the property, (4) that he was hired to protect Counter-Plaintiffs' interest in the property, (5) that he never met with Kenneth or gave him any advice about the partition case, and (6) that he conducted the bidding for Counter-Plaintiffs.

In addition to Counter-Plaintiffs' counsel's testimony, a review of the detailed, sixteen-page statement of attorney's fees demonstrates that Counter-Plaintiffs' counsel's services were provided to Counter-Plaintiffs to protect their interests in light of the contentious litigation and dispute between Kenenth and the Counter-Plaintiffs. However, it also appears that Counter-Plaintiffs' attorney's services were necessary to affect the sale to the benefit of all four owners, including Kenneth.

Work completed by Counter-Plaintiffs' attorney that was in the interest of, and benefitted, all owners included: (1) preparing and filing the counter-claim that accurately and properly set forth the interests of all the parties in the Klock Farm; (2) identification and correction of the error in the legal description of the property; (3) researching potential financing packages and similar sales of land in the area; (4) work related to the auction.

Based on the above, Counter-Plaintiffs' counsel acted in the interest of all the parties for part of the work he completed. Accordingly, attorney's fees, pursuant to statute, for that work requires that they be equitably proportioned among all of the parties, including Kenneth. A review of the

detailed statement demonstrates that Counter-Plaintiffs' attorney completed 117.60 hours of work that benefitted all parties. Kenneth is required to contribute 25 percent of these fees, for a total of $ 7,350 (117.60 X $250 X 25%).

Lastly, Counter-Plaintiffs seek $1,500 for Kenneth's 1/4 share of the title insurance fee. Kenneth argues that title insurance was not required. However, the published legal notice of the sale provided that a copy of the title commitment would be available at Kenneth's and Counter-Plaintiffs' counsels' offices for inspection. Accordingly, this necessary expense that benefitted all parties should be apportioned as to all parties. See O'Malley v. Walker, 4 Ill. App. 2d 555, 564 (1965) (expense of procuring title that benefitted all parties properly apportioned to all parties).

## CONCLUSION

For the foregoing reasons, Counter-Plaintiffs' Petition to Confirm Sale, Provide Payment of the Federal Tax Lien, for Attorney's Fees and Costs, and Other Relief is granted in part. The sale of the subject property is confirmed. Kenneth Klock is ordered to pay 25 percent of the cost of title insurance as to the subject property and $7,350 in attorney's fees.

A status for setting for hearing is scheduled for September 12, 2006, at 9:00 a.m.

Dated: June 27, 2006

JOHN W. DARRAH
United States District Court Judge